# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| B.A. KELLY LAND CO., LLC | CIVIL ACTION NO. 5:18-CV-01243 |
|---|---|
| VERSUS | JUDGE TERRY A. DOUGHTY |
| AETHON ENERGY OPERATING LLC | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a Motion for Partial Summary Judgment [Doc. No. 16] filed by Plaintiff B.A. Kelly Land Co., LLC ("B.A. Kelley"). Defendant Aethon Energy Operating LLC ("Aethon") filed a memorandum in opposition to the motion [Doc. No. 24]. B.A. Kelly filed a reply [Doc. No. 27].

For the following reasons, B.A. Kelly's motion is DENIED.

**I.      RELEVANT FACTS**

This is a suit by an unleased mineral owner, B.A. Kelly, against the operator of certain unit and alternate unit wells, Aethon, for forfeiture under the Well Costs Reporting Statute, Louisiana Revised Statutes 30:103.1 and 103.2, based on Aethon's alleged failure to timely provide initial and quarterly reporting regarding the wells.

B.A. Kelley is the owner of a tract of land in Section 11 of Township 16 North, Range 11 West ("Section 11"), Bossier Parish, Louisiana (the "Tract"). The Tract is included within two compulsory drilling and production units, one for the Lower Cotton Valley Zone, Reservoir A, for the Elm Grove Field, Bossier Parish, Louisiana (the "LCV Unit"), and one for the Haynesville Zone, Reservoir A, for the Elm Grove Field, Bossier Parish Louisiana (the "HA Unit"). Before Aethon became the operator of record of the subject units, 15 unit and alternate wells had been

drilled in the LCV Unit, and one unit well had been drilled in the HA Unit (collectively, the "Wells").

The minerals underlying the Tract were subject to a mineral servitude owned by Dorothy K. Richardson ("Richardson"). Richardson had leased the minerals underlying the Tract, but, upon her death on November 11, 2013, the servitude expired, which resulted in the termination of the mineral lease she had executed by operation of law. The minerals reverted to the surface owner, B.A. Kelly, which had not leased the minerals.

Aethon became the operator of record for the LCV Unit on July 1, 2016, and for the HA Unit on October 1, 2016. When Aethon became the unit operator, all the LCV unit wells and the single HA well had reached payout, meaning that the costs for initially drilling these wells had been recovered by the production revenues for each. This placed Aethon and the unleased owner, B.A. Kelly, in a relationship that entitled B.A. Kelly to its pro rata share of the well's monthly revenues, after the deduction by Aethon of B.A. Kelly's share of the ongoing operating costs for the well.

On December 15, 2017, B.A. Kelly sent a letter to Aethon, stating that it was an unleased owner within the subject units and requesting certain categories of information regarding the Wells, including information preceding the periods of Aethon's operatorship. On April 17, 2018, B.A. Kelly sent a second letter to Aethon, purporting to call to Aethon's attention Aethon's alleged failure to provide the information requested in B.A. Kelly's December 15, 2017 letter. Neither letter made a reference to the Well Costs Reporting Statute or to its penalties.

On or about April 24, 2018, Kyle Hickey ("Hickey"), a Senior Landman for Aethon, contacted B.A. Kelly's representative, Alan L. Brittain ("Brittain"), by telephone to discuss exactly

2

what information B.A. Kelly was seeking from Aethon. During that conversation, Brittain indicated that he had received certain reports from Anadarko, a prior operator of one or more of the Wells, and requested that Aethon send him reports in a similar format. Hickey asserts that he was under the impression that Brittan was seeking some type of summary report, as opposed to a more detailed and itemized statement of the Wells' revenue and expenses.

Hickey indicated to Brittain that he was not sure whether Aethon had a copy of the prior Anadarko reports, and Brittain volunteered to send Hickey a copy of such a report as an example. Hickey told Brittan that he would send him an email so Brittan could send a copy of the Anadarko report back to him. Hickey followed up the conversation with an email to Brittain, thanking Brittain and, again, asking for a copy of the Anadarko report, so that Aethon could style its report according to Brittan's request. No response from Brittain was forthcoming.

On September 21, 2018, B.A. Kelly filed this suit, seeking a forfeiture of Aethon's right to recoup B.A. Kelly's pro rata share of the Wells' operating costs out of production because of Aethon's alleged failure to timely provide B.A. Kelly with reports under La. Rev. Stat. 30:103.1 and 103.2.

On August 2, 2019, B.A. Kelly filed the pending motion seeking partial summary judgment declaring that any rights Aethon may have had to charge costs to B.A. Kelly's well revenue have been forfeited by law. Aethon opposes the motion, and B.A. Kelly has filed a reply.

The matter has been fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air.*

4

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. The Well Costs Reporting Statute

Louisiana Revised Statute 30:103.1 provides in pertinent part as follows:

> A. Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil and gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
>
> (1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing and equipping the unit well.
>
> (2) After establishment of production from the unit well, quarterly reports shall contain the following:
>
> > (a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.

5

> (b) The price received from any purchaser of unit production.
>
> (c) Quarterly operating costs and expenses.
>
> (d) Any additional funds expended to enhance or restore the production of the unit well.
>
> . . .
>
> C. Reports shall be sent by certified mail to each owner of an unleased oil or gas interest who has requested such reports in writing, by certified mail addressed to the operator or producer. The written request shall contain the unleased interest owner's name and address. Initial reports shall be sent no later than ninety calendar days after the completion of the well. The operator or producer shall begin sending quarterly reports within ninety calendar days after receiving the written request, whichever is later, and shall continue sending quarterly reports until cessation of production.

Louisiana Revised Statute 30:103.2 provides:

> Whenever the operator or producer permits ninety calendar days to elapse from date of receipt of written notice by certified mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well.

**C.     Construction of the Well Costs Reporting Statute**

Owners that wish to receive the reports must send the operator a written request by certified mail. § 103.1(C). The operator's duty under the statute is not triggered until that written request is made. *Adams v. Chesapeake Operating, Inc.*, 561 Fed. App'x. 322, 325 (5th Cir. 2014). Section 103.2 provides that when the operator permits 90 days to elapse from completion of the well and 30 additional days to elapse from receipt of written notice by certified mail from the owner of an unleased interest calling attention to the operator's failure to comply

6

with § 103.1, the operator shall forfeit its right to demand contribution from that owner for the cost of the drilling operations of the well. The penalty in § 103.2 can be imposed only if the owner sent the operator another written notice by certified mail, essentially a notice of default, that called attention to the operator's failure to comply with § 103.1. That is followed by a 30-day opportunity for the operator to cure its mistake. *Adams v. Chesapeake Operating, Inc*., Civil Action No. 11-1504, 2013 WL 1193716, *5 (W.D. La. March 21, 2013), *aff'd, Adams, supra.*

An operator's failure to comply with the reporting requirements imposes a harsh penalty: the operator forfeits his right to contribution for expenses from the unleased owner. Because this penalty is harsh, §§ 103.1 and 103.2 are strictly construed by courts. *Miller v. J-W Operating Co.,* No. 16-0764, 2017 WL 3261113, *3 (W.D. La. July 27, 2017) (owner's demand for reports did not trigger Section 103.1 when it did not identify the property or unit).

"The statutes at issue subject an operator to a potentially serious financial penalty, so the law demands that an owner who wishes to take advantage of them must comply *to the letter*. This is in keeping with the principle that penal statutes be strictly construed and require exact compliance." *M&N Resources Management, LLC v. Exco Operating Co., LP*, No. 14-0238, 2017 WL 8809775 at *7 (W.D. La. December 13, 2017) (emphasis added).

**D.     Analysis**

B.A. Kelly contends that there are no genuine issues of material fact as to whether Aethon failed to timely provide the requisite reports, and, that Aethon has, therefore, forfeited its right to recoup B.A. Kelly's pro rata share of the wells' costs out of production under § 103.2

Aethon opposes the motion, asserting that § 103.2 subjects an operator to serious financial penalties and is, therefore, deemed a penal provision, which must be strictly construed.  As such,

7

an owner who wishes to take advantage of § 103.2's forfeiture provision must comply to the letter with the requirements of the Well Cost Reporting Statute.

Aethon argues that B.A. Kelly's written requests in the December 15, 2017 letter and in the April 17, 2017 letter to Aethon for information regarding the subject wells failed to comply to the letter with § 103.1 or § 103.2. Aethon further argues that even if these written demands were sufficient, there are genuine issues of material fact as to whether B.A. Kelly's conduct reasonably lulled Aethon into believing that B.A. Kelly was seeking some kind of *sui generis* summary reports regarding the Wells, as opposed to the type of detailed and itemized reports described in § 103.1.

Finally, Aethon argues that, if the court finds that forfeiture under § 103.2 is somehow warranted, any forfeiture ordered by the court should be limited to the period from the commencement of Aethon's operatorship of the subject wells until the date on which Aethon became compliant with the Well Cost Reporting Statute.

Aethon concludes that B.A. Kelly's motion should be denied, and the court should *sua sponte* enter summary judgment in favor of Aethon, dismissing B.A. Kelly's forfeiture claims under § 103.2 with prejudice.

B.A. Kelly replies that Aethon's arguments ignore the significance of the legally imposed obligations of Aethon as the unit operator to its unleased owner, B.A. Kelly; that if Aethon had complied with what was defined and requested in B.A. Kelly's certified written demands, the forfeiture penalty could not be imposed and Aethon could be assured that it was in full compliance with its obligations under Louisiana law; and, that Aethon's assertion of a material fact dispute between Hickey and Brittain again belies the clear expressions of B.A. Kelly's written demands.

### 1. The December 15, 2017 Letter

B.A. Kelly asserts that Aethon knew that B.A. Kelly was an unleased owner in 2016 and even mailed certain reports to B.A. Kelly concerning the units. B.A. Kelly further asserts that Aethon paid B.A. Kelly certain amounts in the first six months in 2017, before stopping all payments.

B.A. Kelly offers the affidavit of Thomas W. Richardson, Jr., the managing owner of B.A. Kelly, to show that, by the end of 2017, it was confused by Aethon's reports and skeptical due to the lack of payments for unit revenues. B.A. Kelly asserts it did not trust Aethon's reporting to be accurate because the information furnished by Aethon was unsworn and not detailed, and it also appeared that expenses for all wells in both units may have been charged against all production from both units [Doc. No. 16-6].

Therefore, B.A. Kelly sent a letter dated December 15, 2017, to Aethon, which stated:

> Dear Sirs:
>
> B.A. Kelly Land Co, LLC is an Unleased Owner of oil and gas interests in the W ½ of SE ¼, the NE ¼ of the SW ¼, and the SE ¼ of NW ¼ of Section 11, Township 16N, Range 11 W in Bossier Parish, Louisiana, situated in drilling units (LCV SUH) (HOSS RA SU 20) (HA RA SU 61) authorized by the LA Commissioner of Conservation, for which Aethon Energy acts as Operator.
>
> In a November 15, 2013 letter mailed to the operators for these wells, B.A. Kelly Land Co. notified those operators of its claim of an unleased interest in Section 11 which resulted following the death of Mrs. Dorothy Richardson on November 10, 2013. Additionally, that letter requested sworn, detailed, itemized statements of the costs and production for these wells and units. The November 15, 2013 letter did not result in a response by sworn statements of the HOSS RA SU20 and LCV SUH operators. Accordingly, the demands of B.A. Kelly Land co. in this letter to you requests that the past cost and production for these unit wells be provided through November 10, 2013.
>
> Please send the following information on each of the wells listed below:
>
> 1. The total amount of oil, gas or other hydrocarbons produced from

      the unit lands since November 10, 2013 for each well;
2. The price received on that product from any purchaser of unit production;
3. Operating costs and expenses since November 10, 2013 for each well;
4. Any additional funds expended to enhance or restore the production of the unit well(s) since November 10, 2013 for each well.

Respective Louisiana Department of Conservation serial numbers/names for these Aethon operated wells are:

| | |
|---|---|
| 226788 | Womack 11-1 |
| 227933 | Womack 11 2-Alt |
| 228694 | Tooke 11 1-Alt |
| 229062 | Roach et al 1 Alt |
| 230485 | E Roach 11 1-Alt |
| 232386 | Richardson 11 1-Alt |
| 231461 | Roach et al 11 2-Alt |
| 231538 | Roach et al 3-Alt |
| 233181 | G Horton 1-Alt |
| 233968 | E Roach 11 2-Alt |
| 234026 | Elm Grove Plantation 11 2-Alt |
| 234029 | Elm Grove Plantation 11 3-Alt |
| 234779 | Jetsma 11 1-Alt |
| 235441 | Richardson 11 2-Alt |
| 237499 | Richardson 11 3-Alt |
| 239632 | Womack 11 -3 |

Please send the reports to B.A. Kelly Land Co, LLC c/o Alan L. Brittain, 400 Travis Street, Suite 307, Shreveport, LA 71101.

If you have any questions or comments, please do not hesitate to contact me.

[Doc. No. 16-7].

The December 15, 2017 letter was signed by Brittain. B.A. Kelly argues that the December 15, 2017 letter complied with the requirements of § 103.1.

Aethon argues that B.A. Kelly's written request in the December 15, 2017 letter to Aethon for information regarding the subject wells failed to comply "to the letter" with § 103.1 because it neither referenced § 103.1 itself, nor requested the "initial reports" or "quarterly reports" specifically contemplated by the statute.

The Court agrees. The requirement for "formal notice under § 103.1" is a corollary of the penal nature of the statute. Without the formal notice requirement, an operator receiving a vague, incomplete, or overly-broad notice would have to err on the side of caution in order to avoid risking the "serious financial burdens" implied by the statute. This is contrary to the principal of strict construction. Here, the December 15, 2017 letter does not mention Section 103.1 (or any statute for that matter). *Cf M&N Resources Management, LLC,* 2017 WL 8809775, at * 2 (written request specifically referenced the "provisions of Louisiana R.S. 30:103.1.").

Significantly, the letter did not request "initial reports" or "quarterly reports" as specifically provided for in Section 103.1. Rather, the December 15, 2017 letter requested information for each Well dating back to November 10, 2013, which was even prior to the date Aethon became operator. Such requests do not comport with the specific language of Section 103.1.

Given the law's general presumption against finding a forfeiture, the requirement for "formal notice" under Section 103.1, and the requirement that any ambiguity be construed against the party making the demand, the Court is compelled to conclude that B.A. Kelly's December 15, 2017 request does not meet the strict requirements of the Well Cost Reporting Statute, thereby precluding partial summary judgment.

2. **The April 17, 2018 Letter**

When B.A. Kelly received no response to the December 15, 2017 letter, Brittain sent a second letter, dated April 17, 2018, which stated:

> Dear Sirs,
>
> By certified mail dated December 15, 2017 and received by your

> company on December 20, 20 I 7, B.A. Kelly Land Co., LLC identified itself as an unleased owner in the drilling unit affecting its land in Section 11, Township 16 North , Range 11 West, Bossier Parish, Louisiana, and requested written reports concerning operating costs and expenses for each of the 16 unit wells listed therein. The interest now owned by B.A Kelly became unleased on November 10, 2013, after the various times for payout of each unit well.
>
> This letter is to call to your attention your company's failure, as unit operator of the 3 units, to comply with Louisiana law which requires an operator to report to an unleased owner in a unit ongoing operating costs and expenses for the unit well by sworn, detailed, itemized statements.

[Doc. No. 16-8]

Aethon argues that B.A. Kelly's subsequent effort in its April 17, 2017 letter to place Aethon in default failed to comply "to the letter" with § 103.2 because it did not specifically call attention to the operator's failure to comply with § 103.1 or reference the risk of forfeiture under § 103.2.

B.A. Kelly replies that Aethon is a sophisticated corporate entity in oil and gas operations and, as such, was well aware of its obligations to unleased ownership interests. B.A. Kelly argues further that when Aethon became unit operator in 2016, it began immediate communications with B.A. Kelly, provided some accounting information, and made some sporadic production payments to B.A. Kelly. Thus, according to B.A. Kelly, even before the demand letters were sent, Aethon had formally acknowledged its obligations for the accounting of costs and the payment of production proceeds.

The Court finds that this prior history does not excuse B.A. Kelly's failure to comply with the letter of the law. B.A. Kelly's April 17, 2018 letter does not reference the Well Costs Reporting Statute (i.e., either §§ 103.1 or103.2) and does not make any mention of a lawsuit, penalty, or forfeiture under § 103.2.

In light of the above cited deficiencies in the December 15, 2017 letter, Aethon had not

12

been expressly made aware, even after the subsequent April 17, 2018 letter, of B.A. Kelly's purported statutory request for initial and/or quarterly reporting for the Wells or Aethon's alleged exposure to the serious financial penalty of forfeiture involving wells.   Given the strict construction of the Well Costs Reporting Statute as well as the requirement of compliance to the letter of the law, summary judgment on the issue of forfeiture in B.A. Kelly's favor is inappropriate.

Having concluded that the letters do not meet the strict requirements of the Well Costs Reporting Statute, the Court need not address Aethon's additional arguments against summary judgment, i.e., whether Aethon was lulled into complacency by Brittain's communications to Hickey, and, whether any forfeiture ordered by the court should be limited to the period from the commencement of Aethon's operatorship of the subject wells until the date on which Aethon became compliant with the Well Costs Reporting Statute.

### E. *Sua Sponte* Notice

Given the Court's findings that the letters do not meet the strict requirements of the Well Costs Reporting Statute, the Court hereby gives Notice that it intends to *sua sponte* enter summary judgment in favor of Aethon, denying B.A. Kelly's forfeiture claims under § 103.2, and dismissing this suit with prejudice.   B.A. Kelly has twenty-one (21) days to reply to this Notice.   If no reply is filed, the Court will enter judgment in favor of Aethon.

## III. CONCLUSION

For the reasons set forth above, B.A. Kelly's Motion for Partial Summary Judgement [Doc. No. 16] is DENIED

MONROE, LOUISIANA this 7th day of October, 2019.

```
_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE
```